UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALLEN GESSEN et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 26-11083-LTS |
| MASHA GESSEN et al., | ) ) | |
| Defendants. | ) ) ) | |

ORDER RESOLVING PENDING MOTIONS AND DISMISSING CASE

March 24, 2026

SOROKIN, J.

Before the Court are plaintiff Allen Gessen's response to a show-cause Order previously entered in this case, along with various pending motions filed by Gessen.  The Court now renders the following rulings: Gessen's motion to proceed using a pseudonym (Doc. No. 5) is DENIED, though his minor children will be referenced using initials; his motion to seal all submissions in this case (Doc. No. 7) is DENIED; his motion to proceed in forma pauperis (Doc. No. 2) is ALLOWED; all three of his claims are DISMISSED; and Gessen's motions to appoint a guardian ad litem for his children and to stay dismissal pending such appointment (Doc. Nos. 15, 16) are DENIED.  As to each ruling, the Court's reasoning follows.

I.   USE OF PSEUDONYMS AND SEALING

This action began with a flurry of simultaneous filings by Gessen.  He filed a complaint naming himself and his children, O.G. and E.G., as plaintiffs and bringing claims against a journalist who is his cousin, The New York Times, and Serial Productions.  Doc. No. 1.  The claims seek to prevent the publication of a podcast the defendants are producing about Gessen and his family.  The complaint was accompanied by motions to proceed anonymously and to seal

Gessen's submissions to the Court.  Doc. Nos. 5–8.  Because the undersigned was unavailable and Gessen sought various forms of emergency action, Judge Brian Murphy reviewed the submissions and promptly issued a Memorandum and Order addressing many of them ("the March 5 Order").  Doc. No. 12.  Among other things, Judge Murphy temporarily allowed the motions to proceed anonymously and to file under seal, pending further review by the undersigned.  Id. at 2–3.  The Court has now conducted such review.

There is a "strong presumption against the use of pseudonyms in civil litigation." Does 1-3 v. Mills, 39 F.4th 20, 25 (1st Cir. 2022).  This is because proceeding "anonymously is . . . in tension with the common law presumption of public access to judicial proceedings and records." Id.  A party seeking to overcome this presumption must cite exceptional circumstances, such as a "reasonable fear of severe harm that outweighs the public's interest in open litigation." Id. at 26 (quoting Doe v. Megless, 654 F.3d 404, 408 (3d Cir. 2011)).  Gessen has not made such a showing in this case.  The Court therefore DENIES the motion to proceed under pseudonyms. Accordingly, the Court refers to Gessen here by name.  As to O.G. and E.G., use of initials is required even if proceeding anonymously is not.  See Fed. R. Civ. P. 5.2(a)(3).

As far as sealing is concerned, the March 5 Order explained that the public's presumptive right of access to court proceedings means that "only the most compelling reasons can justify non-disclosure of judicial records" in civil actions.  Doc. No. 12 at 2 (quoting United States v. Kravetz, 706 F.3d 47, 59 (1st Cir. 2013)).  So long as the children's initials are used, Gessen has not established that this case presents the sort of "compelling reasons" required to warrant across-the-board sealing.  The Court therefore DENIES the blanket motion to seal.  Unless Gessen notifies the Court within fourteen days of this Order that any of his submissions contain specific, non-public information about O.G. or E.G. (such as a date of birth, full name, or

medical condition), all submissions presently sealed will be UNSEALED by the Clerk on April 8, 2026.

II.    IN FORMA PAUPERIS STATUS

Gessen sought leave to proceed without prepayment of the filing fee, Doc. No. 2, a request which was not resolved in the March 5 Order.  Upon review of that motion, the Court concludes that Gessen is without income or assets to pay the filing fee.  His motion to proceed in forma pauperis is therefore ALLOWED.  Pursuant to 28 U.S.C. § 1915(b)(1), the Court assesses an initial partial filing fee with the remainder of the fee to be paid in accordance with 28 U.S.C. § 1915(b)(2).

III.    SHOW-CAUSE RESPONSE

With his complaint, Gessen filed a motion seeking a temporary restraining order or preliminary injunction preventing the defendants from including "any private facts about O.G. and E.G.," and any "of Allen Gessen's voice recordings," in the podcast.  Doc. No. 3.  The same motion also sought an order requiring the defendants "to delete and destroy all unauthorized recordings of Allen Gessen" and to pay Gessen "damages for emotional distress, endangerment, and injury to reputation."  Id. at 2.  Gessen's request for ex parte, interim relief was denied in the March 5 Order because he had not in the complaint alleged facts establishing this Court's personal jurisdiction over the defendants or supporting a finding that this District was an appropriate venue for this action.  Doc. No. 12 at 3–5.  The absence of such facts rendered Gessen unlikely to succeed on the merits of his claims.  He was ordered to show cause why these deficiencies did not compel the Court to dismiss this case.  Id. at 5–6.  Gessen timely responded. Doc. No. 14.  His arguments do not avoid dismissal.

Venue is generally assessed by reference to the location of the defendant or the events underlying a plaintiff's lawsuit.  28 U.S.C. § 1391(b).  In a case alleging multiple claims, a

3

plaintiff must establish that venue is proper with respect to each cause of action. <u>Stars for Art Prod. FZ, LLC v. Dandana, LLC</u>, 806 F. Supp. 2d 437, 447–48 (D. Mass. 2011); <u>cf.</u> <u>Doyle v. Merz N. Am., Inc.</u>, 405 F. Supp. 3d 186, 191 (D. Mass. 2019) (noting specific personal jurisdiction is similarly assessed as to each defendant and each claim).  Failure to establish that venue is proper is a basis for dismissal.  <u>Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 571 U.S. 49, 55–56 (2013).

The Court begins with a pair of factually related claims Gessen asserts only on his own behalf: promissory estoppel and a Lanham Act violation.  Doc. No. 1 at 4–6 (Counts II and III).  Gessen alleges all three defendants are New York residents, which means the venue question before this Court turns on whether "a substantial part of the events or omissions giving rise to" these claims "occurred" in Massachusetts.  28 U.S.C. § 1391(b)(2).  Counts II and III concern the defendants' anticipated use of a telephone interview of Gessen by his cousin.  Gessen alleges that the defendants will publish his voice recordings—obtained when his cousin (in New York) called Gessen (in a federal prison in New Jersey)—in a podcast produced by the New York Times.  In Count II, Gessen claims such use breaks his cousin's promise that the recorded interview would be used only for an episode of This American Life (a public-radio program produced by a different media company).  In Count III, Gessen claims the defendants' use of the recording "is likely to deceive or confuse consumers into believing that Allen Gessen has agreed to associate or affiliate himself with the New York Times," thereby damaging his "professional reputation" which is "strong" and "centered in Israel."  Doc. No. 1 at 4–6.  The "events or omissions" giving rise to both claims, thus, happened (and the anticipated harm will arise) in locations other than Massachusetts.

The promise allegedly broken was not made in Massachusetts, nor did it require (or prohibit) publication of the recording within Massachusetts. Neither party to the recorded conversation was in Massachusetts during the interview. The reputation Gessen fears will be harmed, and potential business connections he worries will be impacted, are centered elsewhere. Nothing in Gessen's show-cause submission suggests otherwise as to Counts II and III.[1] To be sure, Gessen claims his cousin investigated and fact-gathered in Massachusetts in order to produce a podcast about a newsworthy topic—Gessen's conviction of a federal crime after a public trial, and the events that led to it. But this does not supply the connection to this District that is required in order to establish venue for Gessen's promissory estoppel and Lanham Act claims. Those claims, as alleged, specifically arise from the podcast's (alleged, anticipated) use of a single recorded conversation Gessen had with his cousin. Neither that conversation, nor Gessen's allegations about the harms he expects to suffer if it is used in the podcast, "occurred" in this District. Venue, therefore, does not lie here as to Counts II and III.

Though transfer is an alternative to dismissal if venue lies elsewhere, the Court finds it is not an appropriate option here. For one thing, despite an opportunity to voluntarily withdraw

---

[1] Gessen's show-cause response describes facts, not alleged in the complaint, regarding where and how his cousin collected information other than the recorded interview. See Doc. No. 14 at 6–7. But the facts connected to Massachusetts relate primarily to O.G. and E.G. and the privacy-related claim Gessen attempts to advance on their behalf; the same facts are at most tangential to Gessen's individual claims. Gessen does not, and likely could not, advance any legal claim that would broadly prevent the defendants from developing and releasing a podcast concerning his criminal conduct. Cf. Neb. Press Ass'n v. Suart, 427 U.S. 539, 559 (1976) (classifying "prior restraints on speech and publication" as "the most serious and the least tolerable infringement on First Amendment rights," and emphasizing that protection against such restraints "should have particular force as applied to reporting of criminal proceedings"). Perhaps understanding this, Gessen's challenges in this case are tied to information about his children and the use of a specific recorded interview with him—not to the investigation and publication of information about him or his crime in general. See Doc. No. 1 at 6 (conceding defendants may "report facts about" Gessen "which may be newsworthy and of public interest" but urging right "does not extend to the use of . . . improperly obtained voice recordings").

this action and file it in another District, Doc. No. 12 at 6, Gessen opted to continue his attempts to litigate the case here.  Further, if there were a basis to find venue as to Counts II and III in another District, transfer would be an exercise in futility.  Gessen's complaint does not advance a short and plain statement of either claim that plausibly entitles him to relief from the defendants. Fed. R. Civ. P. 8(a)(2); cf. Krick v. Raytheon Co., 695 F. Supp. 3d 202, (D. Mass. 2023) (assessing as to each claim where venue was lacking whether transfer would be futile due to inevitable statute-of-limitations defense).

In Count II, Gessen alleges he reasonably relied on his cousin's promise to publish their conversation on a specific program, and that he would not have agreed to the interview absent this "representation limiting the scope of use."  Doc. No. 1 at 4–5.  In particular, Gessen claims his cousin promised that the recorded interview would be used only for one episode of a prominent, long-running, public-radio program about his crime; that he reasonably relied on this promise in agreeing to the interview; and that now his cousin has expanded the project into a multi-episode podcast about his crime and his background (including his family life—a topic not necessarily separable from his crime, given the nature of the offense) that will be circulated by a different prominent media outlet.  The Court finds these facts do not state a viable promissory estoppel claim.  Even accepting that such a promise was made, and that Gessen reasonably relied on it, Gessen has not plausibly shown how the foregoing series of events works an "injustice that can be avoided only by enforcement of the promise."  See Carroll v. Xerox Corp., 294 F.3d 231, 242 (1st Cir. 2002).[2]

---

[2] The publications identified by Gessen—This American Life, and a podcast produced by the New York Times—are not obviously different in scope or audience.  Gessen does not allege, for example, that he relied on a promise to use the interview for a story in a small-town newspaper circulated to a few thousand residents, only to learn that it would be aired during a Super Bowl commercial seen by millions of viewers around the world.

In Count III, Gessen alleges false association under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  Doc. No. 1 at 5–6.  As relevant here, such a claim requires plausible allegations showing "a likelihood of consumer confusion as to the affiliation, connection, or association" of the plaintiff "with another person."  Am. Bd. of Internal Med. v. Salas Rushford, 114 F.4th 42, 64 (1st Cir. 2024) (citation modified).  False-association claims "typically involve attempts to appropriate the goodwill associated with a competitor, for example, by misappropriating a trademark or falsely implying an endorsement."  Id. (citation modified).  Claims that do not stem from such consumer confusion—for example, claims alleging "that consumers will be misled into believing" something that is published by a defendant and that the plaintiff views as disparaging—"fail[] to state a claim under this liability theory."  Id.  Just so here.  Gessen suggests unspecified prospective clients might be "confuse[d] . . . into believing" he is affiliated with the New York Times, upon learning of or hearing the podcast and its use of his recorded interview, and that this will tarnish Gessen's reputation and impair his undescribed future business prospects in Israel due to the "perceived severe anti-Israel bias" of the New York Times.  Doc. No. 1 at 5–6.  This is simply not the stuff of a Lanham Act false-association claim. And even if it were, the allegations are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture."  SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Accordingly, the Court DISMISSES the promissory estoppel and Lanham Act claims (Counts II and III in the complaint).[3]

---

[3] As to the promissory estoppel claim and the privacy claim addressed in the next paragraph, this Court's subject-matter jurisdiction depends on Gessen's invocation of the diversity statute and an unadorned assertion that the amount in controversy here exceeds $75,000.  Doc. No. 1 at 2 (invoking 28 U.S.C. § 1332(a)).  Nowhere does Gessen offer further allegations to quantify his (or his children's) damages, such that the Court can discern whether either state-law claim could

Only one claim remains.  The complaint alleges that the defendants will violate a Massachusetts right-to-privacy statute if they disclose or disseminate "private facts about the minor Plaintiffs" on a podcast reaching an "audience of several million people."  See Doc. No. 1 at 4.  To the extent Gessen seeks to pursue this claim on his own behalf, he has not plausibly stated it.  The paragraphs alleging this claim relate only to Gessen's children.  Id.  Aside from alleging unauthorized use of his voice recording, the complaint does not describe any plan by the defendants to publicize any private facts about Gessen.  Even the defendants' alleged use of the voice recording challenged in Gessen's other claims could not support this one, as he admittedly consented to the public disclosure of that recording's content (via a different widely circulated audio program).  As to Gessen, then, Count I is DISMISSED.

As to O.G. and E.G. and a potential invasion-of-privacy claim, Gessen's show-cause submission raises facts that might support a finding of venue and personal jurisdiction.  At least two hurdles remain, however, and are not susceptible to resolution on the present record.  One is subject-matter jurisdiction; any state-law claim the minor plaintiffs might be able to state against the defendants can proceed in federal court only if the amount in controversy, for each child, exceeds $75,000.  The other is representation; as noted previously, Gessen cannot pursue claims for his children, Doc. No. 12 at 2, and no lawyer has entered an appearance on their behalf.  These questions lead the Court to the final pair of motions now pending.

---

plausibly support damages to any single plaintiff in excess of the statutory minimum.  See CE Design Ltd. v. Am. Economy Ins. Co., 755 F.3d 39, 43–44 (1st Cir. 2014) (discussing anti-aggregation rule and how to measure damages in multi-party, multi-claim context).  Because a "plaintiff's good faith allegation of damages meeting the required amount in controversy is usually enough" to establish jurisdiction until such allegation is challenged, the Court declines to explore this issue further at this time.  Id. at 43.

IV.   APPOINTMENT OF GUARDIAN AD LITEM

On the eve of a deadline set in the March 5 Order for counsel to enter an appearance on behalf of O.G. and E.G., Gessen filed a pair of "emergency" motions concerning his children's participation in this action.  One asked the Court to appoint a guardian ad litem ("GAL") for the children pursuant to Rule 17(c)(2).  Doc. No. 15.  The other sought a stay of any decision dismissing the children pending appointment of a GAL.  Doc. No. 16.  No lawyer has entered an appearance on behalf of either child.  In the circumstances presented, the Court declines to appoint a GAL.

The Federal Rules of Civil Procedure provide that, where a minor "is unrepresented in an action," the Court "must appoint a guardian ad litem" or "issue another appropriate order."  Fed. R. Civ. P. 17(c)(2).  Gessen points to this mandatory language in urging the Court to appoint a GAL for O.G. and E.G. here.  See Doc. No. 15 at 2.  But the Rule requires the Court to do so only if the minor(s) at issue "do[] not have a duly appointed representative" who could sue on their behalf.  Fed. R. Civ. P. 17(c)(2); see Fed. R. Civ. P. 17(c)(1) (listing representatives, including "general guardian," who may sue on minor's behalf).  Gessen has not alleged his children lack such a representative.  Indeed, his own submissions admit facts which substantially undermine his invocation of Rule 17(c)(2).

First, the Middlesex County Probate and Family Court has before it ongoing proceedings concerning the custody of the children, including Gessen's rights as a non-custodial parent and his ex-wife's rights as their custodial parent.  Doc. No. 15 at 2; see Docket, Chigariro v. Gessen, No. MI21W1776WD (Middlesex Cnty. Prob. & Fam. Ct.).[4]  Second, the children have a state-

---

[4] The Court takes judicial notice of publicly available orders and filings in the Probate and Family Court action that are pertinent to the questions before it here.  See Kowalski v. Gagne, 914 F.2d 299, 305 (1st Cir. 1990).

court-appointed GAL representing their interests in the Probate and Family Court proceedings. See Doc. No. 15 at 2.  Third, Gessen asked the Probate and Family Court to take action concerning dissemination of information about the children and/or to authorize him to retain counsel to represent the children in this case, thereby alerting both the GAL and the state-court judge of the potential claims Gessen believes should be asserted on his children's behalf and of the podcast that is the subject of this action.  Id.  Fourth, the state court, having considered Gessen's requests and after a hearing at which both the GAL and Gessen's state-court lawyer were present, declined to permit Gessen to retain counsel for his children or to direct the GAL to take action on their behalf.  Id.  Finally, the children's custodial parent (their mother) was apparently interviewed—and permitted the children to be interviewed—for the podcast at issue, Doc. No. 14 at 6, and she objected before the Probate and Family Court to Gessen's efforts to restrict the content of the podcast, see Opp'n to Def.'s Motions at 6–10, Chigariro v. Gessen, No. MI21W1776WD (Middlesex Cnty. Prob. & Fam. Ct Mar. 9, 2026) (citing producers' assurance "that the series will not disclose full names or other identifying information" of E.G. and O.G.).

Though counsel has not appeared to pursue the claims Gessen wishes to assert for the children in this case, the record before the Court does not establish that O.G. and E.G. are lacking "a duly appointed representative" able to sue on their behalf.  Rather, the foregoing facts suggest that their custodial parent does not wish file suit, and neither the GAL nor the Probate and Family Court judge have determined that the circumstances warrant authorizing action against the custodial parent's wishes.  Against that backdrop, the Court finds appointment of a GAL here is neither required by the law nor warranted by the facts.  See Developmental Disabilities Advoc. Ctr., Inc. v. Melton, 689 F.2d 281, 285–86 (1st Cir. 1982).  Gessen's motions urging otherwise are therefore DENIED.  As to E.G. and O.G., Count I is DISMISSED.

10

V.    CONCLUSION

In sum, Gessen's motion to proceed in forma pauperis (Doc. No. 2) is ALLOWED.  The

motions to proceed under pseudonyms and to seal (Doc. Nos. 5, 7) are DENIED.  The

emergency motions to appoint a GAL and stay dismissal (Doc. Nos. 15, 16) are DENIED.  And

this action is DISMISSED.  All docketed filings in this case will be UNSEALED on April 8,

2026, unless Gessen notifies the Court within fourteen days that that any contain specific, non-

public information about O.G. or E.G.

SO ORDERED.


   /s/ Leo T. Sorokin
United States District Judge

11